WIEAND, Judge:
 

 George Davis was tried non-jury and was found guilty of involuntary deviate sexual intercourse, corruption of a minor and endangering the welfare of a child. Post-trial motions were denied, and Davis was sentenced for involuntary deviate sexual intercourse to serve a term of imprisonment for not less than five (5) years nor more than ten (10) years, to be followed consecutively by a five (5) year period of probation imposed for corruption of a minor.
 
 [1]
 
 On direct appeal from the judgment of sentence, Davis contends that (1) there was insufficient evidence to sustain his convictions; (2) the trial court abused its discretion by improperly limiting cross-examination of the victim’s mother; and (3) defense counsel was constitutionally ineffective. Davis’s principal argument, how
 
 *475
 
 ever, is that the trial court erred by refusing to permit the defense to review and introduce into evidence therapy session records made by the victim’s family counselor.
 

 In challenging the sufficiency of the evidence to sustain his convictions, appellant argues that absent various abuses of discretion by the trial court in its evidentiary rulings, the Commonwealth’s remaining evidence would have been rendered so clearly inadequate that no reasonable trier of fact would have convicted him. Specifically, appellant argues that if his counsel had been permitted to examine and introduce into evidence the records of the victim’s family counseling therapy sessions, the victim’s testimony “would have been rendered so contradictory and biased as to render it meaningless.”
 

 In
 
 Commonwealth v. Smith,
 
 523 Pa. 577, 568 A.2d 600 (1989), the Supreme Court observed:
 

 The test to be applied is whether, viewing all of the evidence in the light most favorable to the Commonwealth as verdict winner, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to enable the trier of fact to find every element of the crime beyond a reasonable doubt.
 
 Commonwealth v. Jermyn,
 
 516 Pa. 460, 533 A.2d 74 (1987);
 
 Commonwealth v. Sneed,
 
 514 Pa. 597, 526 A.2d 749 (1987);
 
 Commonwealth v. Holzer, 480
 
 Pa. 93, 389 A.2d 101 (1978);
 
 Commonwealth v. Kichline,
 
 468 Pa. 265, 361 A.2d 282 (1976).
 

 In assessing the sufficiency of the evidence to establish that a [crime] was committed and that the person or persons charged were those responsible, we are called upon to consider all of the testimony that was presented to the [trier of fact] during the trial, without consideration as to the admissibility of that evidence. The question of sufficiency is not assessed upon a diminished record.
 
 Commonwealth v. Rawles,
 
 501 Pa. 514, 462 A.2d 619 (1983);
 
 Commonwealth v. Lovette,
 
 498 Pa. 665, 450 A.2d 975 (1982),
 
 cert. denied,
 
 459 U.S. 1178, 103 S.Ct. 830, 74 L.Ed.2d 1025 (1983);
 
 Common
 
 
 *476
 

 wealth v. Cohen,
 
 489 Pa. 167, 413 A.2d 1066,
 
 cert. denied,
 
 449 U.S. 840, 101 S.Ct. 118, 66 L.Ed.2d 47 (1980);
 
 Commonwealth v. Harper,
 
 485 Pa. 572, 403 A.2d 536 (1979);
 
 Commonwealth v. Hoskins,
 
 485 Pa. 542, 403 A.2d 521 (1979);
 
 Commonwealth v. Firth,
 
 479 Pa. 333, 388 A.2d 683 (1978);
 
 Commonwealth v. Baker,
 
 466 Pa. 479, 353 A.2d 454 (1976). Where improperly admitted evidence has been allowed to be considered by the [fact finder], its subsequent deletion does not justify a finding of insufficient evidence. The remedy in such a case is the grant of a new trial.
 
 Commonwealth v. Fortune,
 
 464 Pa. 367, 346 A.2d 783 (1975);
 
 Commonwealth v. Poteet,
 
 434 Pa. 230, 253 A.2d 246 (1969);
 
 Commonwealth v. Gist,
 
 433 Pa. 101, 249 A.2d 351 (1969);
 
 Commonwealth v. Pearson,
 
 427 Pa. 45, 233 A.2d 552 (1967).
 

 Id.
 
 at 581-582, 568 A.2d at 602-603. See also:
 
 Commonwealth v. Lewis,
 
 424 Pa.Super. 531, 539, 623 A.2d 355, 359 (1993);
 
 Commonwealth v. DiSabatino,
 
 399 Pa.Super. 1, 4, 581 A.2d 645, 646 (1990).
 

 It logically follows that the sufficiency of the evidence to sustain a criminal conviction also should not be assessed upon an enhanced record, as appellant has requested. Thus, where a trial court has erroneously excluded evidence proffered by the defense, such evidence may not be added to the record on appeal. Rather, review of the sufficiency of the evidence is limited to the evidence which was admitted at trial, and upon which the fact finder’s verdict was actually based. The remedy for the erroneous exclusion of relevant defense evidence, as it is for the improper admission of evidence, is the award of a new trial.
 

 Viewing the evidence in the light most favorable to the Commonwealth, the following facts may be discerned from the record in this case. Appellant married the victim’s mother, Barbara Davis, in 1981. Thereafter, he, his wife and the victim, P.P., resided in a one bedroom apartment located at 1147 South 47th Street, Philadelphia. According to the victim, who was fourteen years of age at the time of trial, appellant had begun sexually abusing him when he was six years old. The sexual assaults would occur on alternate Fridays, when
 
 *477
 
 appellant received his pay. On these occasions, appellant would go out drinking after work and usually would return home after midnight. When appellant did return home, he would be drunk, and the victim’s mother would be asleep in the bedroom. Appellant then would approach the victim, who slept on the living room sofa, and instruct him to perform oral sex. Thereafter, according to the victim, appellant “would put his dick up my butt.” These assaults ceased in July, 1986, when the family moved into a two bedroom house located at 1225 South Peach Street in Philadelphia. In May, 1989, appellant and his wife separated, and thereafter the victim disclosed the abuse. He did so for the first time in 1991 during a family therapy counseling session at the Family Institute of Philadelphia.
 

 After careful review, we are satisfied that the testimony of the victim was sufficient to permit the trier of fact to conclude beyond a reasonable doubt that appellant had committed the offenses of involuntary deviate sexual intercourse,
 
 [2]
 
 corruption of a minor
 
 [3]
 
 and endangering the welfare of a child.
 
 [4]
 
 The law in this Commonwealth is clear that the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense-witnesses. See:
 
 Commonwealth v. Poindexter,
 
 435 Pa.Super. 509, 516-17, 646 A.2d 1211, 1214 (1994);
 
 Commonwealth v. Kunkle,
 
 424 Pa.Super. 499, 503, 623 A.2d 336, 338 (1993);
 
 Commonwealth v. Trimble,
 
 419 Pa.Super. 108, 113, 615 A.2d 48, 50 (1992);
 
 Commonwealth
 
 
 *478
 

 v. Ziegler,
 
 379 Pa.Super. 515, 519-520, 550 A.2d 567, 569 (1988);
 
 Commonwealth v. Stoner,
 
 284 Pa.Super. 364, 369, 425 A.2d 1145, 1148 (1981). Instantly, the trial court found the victim’s testimony to be credible; and our review of the record discloses that such testimony, if believed, was sufficient to establish each element of the offenses charged beyond a reasonable doubt. Appellant’s challenge to the sufficiency of the evidence, therefore, must be rejected.
 

 At trial, the victim’s mother and appellant’s wife, Barbara Davis, corroborated in some respects testimony which had been given by the victim. On cross-examination of this witness, the following occurred:
 

 Q. Now, during the time that you lived in the apartment there were periods of separation; right?
 

 A. Yes.
 

 Q. Okay. So you recall that the separation in 1984 was a brief separation?
 

 A. Yes.
 

 Q. And likewise with the one in 1985?
 

 A. No, I don’t remember being separated in ’85. I remember being separated briefly when I moved into the house July 17th, 1986. He joined me, we were separated for about three months while I was pregnant in 1986. Now, you wouldn’t forget something like that, a man leaves you while you’re pregnant.
 

 Q. And he came back in 1986; right?
 

 A. Yes. When I moved in the house in June, he moved in with me.
 

 Q. Okay. And that was after having been away for a while?
 

 A Couple months.
 

 Q. And you remember that specifically; right?
 

 A. Yes.
 

 
 *479
 
 Q. Because it was hard on you him being away while you were pregnant; right?
 

 A. I never thought that I would be a woman — I thought that when I got married I would never have my daughter alone. I had my son alone.
 

 Q. In fact, when he came back, you again joined together, you had your marriage intact again; isn’t that right?
 

 A. We were back together.
 

 Q. Okay. And at that time isn’t it true that you contracted venereal disease?
 

 MR. WAGNER: Objection, Your Honor. Relevance.
 

 THE COURT: Sustained.
 

 You don’t have to answer.
 

 MR. WAGNER: I ask that the question be stricken.
 

 MS. WEIZENBAUM: Your Honor, if I may.
 

 THE COURT: Don’t argue with me please. When I make a ruling it’s firm, do you understand me? You are going to enlighten me on the law? Move on with your next question.
 

 MS. WEIZENBAUM: Your Honor, I—
 

 THE COURT: Move on with your next question, ma’am,
 

 (emphasis added).
 

 Appellant contends that the trial court abused its discretion by refusing to permit his counsel to cross-examine Barbara Davis regarding her contraction of a venereal disease as a result of engaging in marital relations with appellant. Such questioning, appellant suggests, would have tended to refute the victim’s allegations of sexual abuse by appellant. This is so, appellant argues, because the victim would probably have been infected also with a venereal disease if, as alleged, appellant had engaged in acts of anal intercourse with him. The absence of such infection, therefore, would tend to rebut the averments of anal intercourse.
 

 It is well settled that “ ‘[t]he scope and limits of cross-examination are largely within the discretion of the trial court and its actions pertaining thereto will not be reversed in the
 
 *480
 
 absence of a clear abuse of its discretion or error of law.’ ”
 
 Commonwealth v. Mobley,
 
 424 Pa.Super. 385, 390, 622 A.2d 972, 975 (1993), quoting
 
 Commonwealth v. Buehl,
 
 510 Pa. 363, 388, 508 A.2d 1167, 1179 (1986),
 
 cert. denied,
 
 488 U.S. 871, 109 S.Ct. 187, 102 L.Ed.2d 156 (1988). See also:
 
 Commonwealth v. Nolen,
 
 535 Pa. 77, 82, 634 A.2d 192, 195 (1993);
 
 Commonwealth v. Birch,
 
 532 Pa. 563, 566, 616 A.2d 977, 978 (1992). However, the Supreme Court has also observed:
 

 As a general rule, it is elementary that a party is entitled on cross-examination to bring out every circumstance relating to a fact which an adverse witness is called to prove.
 
 Peters v. Shear,
 
 351 Pa. 521, 41 A.2d 556 (1945). In criminal cases, the right of cross-examination extends beyond the subjects testified to in direct testimony and includes the right to examine a witness on any facts tending to refute inferences or deductions arising from matters testified to on direct examination
 
 Commonwealth v. Lopinson,
 
 427 Pa. 284, 234 A.2d 552 (1967), vacated on other grounds, 392 U.S. 647, 88 S.Ct. 2277, 20 L.Ed.2d 1344 (1968).
 

 Commonwealth v. Green,
 
 525 Pa. 424, 454, 581 A.2d 544, 558-559 (1990). See also:
 
 Commonwealth v. Snoke,
 
 525 Pa. 295, 305, 580 A.2d 295, 300 (1990);
 
 Commonwealth v. Jubilee,
 
 403 Pa.Super. 589, 603-604, 589 A.2d 1112, 1118-1119 (1991).
 

 Instantly, the proposed cross-examination of Barbara Davis, regarding her contracting venereal disease from appellant, was directed to the time period after the family had moved into a new house in July, 1986, and following a period of three months during which appellant had been separated from the family. According to the Commonwealth’s evidence, however, appellant’s sexual assaults on his stepson had ceased by the time the family had moved into the new home. It seems clear, therefore, that appellant’s alleged infection of Barbara Davis occurred subsequent to the relevant time period during which he was charged with sexually abusing the victim. Under these circumstances, the trial court cannot be deemed to have abused its discretion by sustaining an objection on grounds that the question posed to Barbara Davis was irrelevant. That appellant may have had venereal disease and
 
 *481
 
 passed it onto his wife at sometime after his sexual abuse of the victim had stopped would not have refuted in any way the allegations made by the victim against him.
 

 The law presumes that counsel has been constitutionally effective; and, therefore, appellant bears the burden of proving the contrary.
 
 Commonwealth v. Baker,
 
 531 Pa. 541, 562, 614 A.2d 663, 673 (1992). See also:
 
 Commonwealth v. Floyd,
 
 506 Pa. 85, 90, 484 A.2d 365, 367 (1984);
 
 Commonwealth v. House,
 
 371 Pa.Super. 23, 28, 537 A.2d 361, 363 (1988) . Therefore, it is necessary that a defendant asserting a claim of ineffective assistance of counsel make an offer of proof “alleging sufficient facts upon which a reviewing court can conclude that trial counsel may have, in fact, been ineffective.”
 
 Commonwealth v. Durst,
 
 522 Pa. 2, 5, 559 A.2d 504, 505 (1989) . See also:
 
 Commonwealth v. Stanley,
 
 534 Pa. 297, 299-300, 632 A.2d 871, 872 (1993);
 
 Commonwealth v. Pettus,
 
 492 Pa. 558, 563, 424 A.2d 1332, 1335 (1981). In order to prevail on a claim of ineffectiveness, a defendant must demonstrate that: “(1) the underlying claim is of arguable merit; (2) the particular course chosen by counsel did not have some reasonable basis designed to effectuate his interests; and (3) counsel’s ineffectiveness prejudiced him.”
 
 Commonwealth v. Williams,
 
 532 Pa. 265, 274, 615 A.2d 716, 720 (1992). See also:
 
 Commonwealth v. Carpenter,
 
 533 Pa. 40, 45, 617 A.2d 1263, 1265 (1992);
 
 Commonwealth v. Rollins,
 
 525 Pa. 335, 344, 580 A.2d 744, 748 (1990).
 

 Appellant asserts that his trial counsel was ineffective for failing to make an offer of proof concerning the relevance of her proposed cross-examination of Barbara Davis as to whether the witness had contracted venereal disease from appellant. This claim is lacking in arguable merit. We have already determined that the trial court properly sustained a prosecution objection on grounds that the proposed question was irrelevant to the issues being tried. When the objection was sustained, moreover, appellant’s trial counsel attempted to argue the matter further, but was instructed by the trial judge
 
 *482
 
 not to argue with the court and to move on to her next question. Trial counsel was not ineffective.
 

 Appellant also asserts that trial counsel was ineffective because she failed to request that the victim be subjected to a physical examination to determine whether his anus had ever been penetrated. In rejecting this assertion of ineffectiveness, the trial court reasoned as follows:
 

 First, the Court knows of no rule or authority that would enable it to order a complainant to succumb to a physical examination that by its very nature would subject him or her to embarrassment or trepidation. In addition, the complainant first reported that he was a victim of sexual assault some five years after the defendant last assaulted him. While professing to possess no specialized medical skill,' it is the Court’s belief that it is highly unlikely that any injuries caused during the assaults would still be detectible [sic] some five years after the assaults ceased. Therefore, even had defense counsel requested that an examination be conducted, the request would have been denied simply because the absence of any physical sign that the complainant had been assaulted would not have been probative on the issue whether the assaults were committed. This claim is thus denied.
 

 Trial Court Opinion at pp. 6-7. A similar claim of ineffectiveness was rejected in
 
 Commonwealth v. Perry,
 
 403 Pa.Super. 212, 588 A.2d 917 (1991), where the Superior Court held that counsel was not ineffective for failing to petition the trial court to compel a child rape victim to undergo a medical examination in order to support the defendant’s contention that, because of the relative size of his and the victim’s sex organs, it was unlikely that the rape could have occurred without physical injury to the child. In rejecting this claim, the Superior Court reasoned that the rape statute required evidence of only slight penetration and, hence, defendant’s proposed use of medical testimony regarding the size of his and the victim’s sex organs was irrelevant. The Court, therefore, found no arguable merit in the defendant’s claim that counsel
 
 *483
 
 should have petitioned the trial court for a medical examination of the victim.
 
 Id.
 
 at 220-222, 588 A.2d at 921-922.
 

 Instantly, given the time lapse of approximately five years between the sexual abuse and the victim’s disclosure thereof, we agree with the trial court that any probative value of the results of a physical examination of the victim would have been minimal. Appellant, moreover, has cited no authority that a victim of a sexual assault may be compelled, upon motion of the defendant, to undergo an invasive medical examination. Appellant’s trial counsel, therefore, will not be deemed ineffective for failing to perform a useless act. See:
 
 Commonwealth v. Mescall,
 
 405 Pa.Super. 326, 330, 592 A.2d 687, 689 (1991);
 
 Commonwealth v. Thomas,
 
 372 Pa.Super. 349, 353, 539 A.2d 829, 831 (1988).
 

 Prior to trial, appellant caused a subpoena duces tecum to be issued, directed to the Family Institute of Philadelphia and seeking the records of the victim’s family therapy counseling sessions. The victim, along with his mother, sister and biological father, had undergone family counseling at the Family Institute beginning in February, 1991. It was during one of these therapy sessions that the victim revealed, for the first time, that he had been sexually abused by appellant. Counsel for the Family Institute filed a motion to quash the subpoena on grounds that its records were privileged. Following a pretrial hearing, on May 11, 1992, the trial court found that such records were absolutely privileged under the statutory sexual assault counselor privilege set forth at 42 Pa.C.S. § 5945.1. The trial court held that, even though the victim himself had consented to release of the records, other members of the family had refused to waive the privilege. The privacy interests of the victim’s family members, the court concluded, outweighed appellant’s need to have access to the records.
 

 On appeal, appellant contends that the trial court erred by concluding that family members other than the victim could assert the statutory sexual assault counselor privilege. Once the court found that the victim had waived the privilege, appellant argues, it should have granted the defense access to the victim’s family therapy records. Access to these records
 
 *484
 
 was essential, appellant argues, because the records were believed to contain the clinical observation of the victim’s counselor that the victim was a “pathological liar.” Such information, according to appellant, would have corroborated defense assertions that the victim was biased, untruthful and predisposed toward fabricating allegations of sexual abuse. The records, therefore, would have been relevant for the purpose of impeaching the testimony of the victim. Accordingly, appellant urges that the trial court’s denial of defense access to these records violated his rights under the United States and Pennsylvania Constitutions to confront his accusers, to have compulsory process for obtaining witnesses, and to due process of law.
 

 The statutory sexual assault counselor privilege provides as follows:
 

 § 5945.1. Confidential communications to sexual assault counselors
 

 . (a) Definitions. — As used in this section, the following words and phrases shall have the meanings given to them in this subsection:
 

 “Coparticipant.” A victim participating in group counseling.
 

 “Rape crisis center.” Any office, institution or center offering assistance to victims of sexual assault and their families through crisis intervention, medical and legal accompaniment and follow-up counseling.
 

 “Sexual assault counselor.” A person who is engaged in any office, institution or center defined as a rape crisis center under this section, who has undergone 40 hours of sexual assault training and is under the control' of a direct services supervisor of a rape crisis center, whose primary purpose is the rendering of advice, counseling or assistance to victims of sexual assault.
 

 “Victim.” A person who consults a sexual assault counselor for the purpose of securing advice, counseling or assistance concerning a mental, physical or emotional condition caused or reasonably believed to be caused by a sexual
 
 *485
 
 assault. The term shall also include those persons who have a significant relationship with a victim of sexual assault and who seek advice, counseling or assistance from a sexual assault counselor concerning a mental, physical or emotional condition caused or reasonably believed to be caused by a sexual assault of a victim.
 

 “Confidential communication.” All information, oral or written, transmitted between a victim of sexual assault and a sexual assault counselor in the course of their relationship, including, but not limited to, any advice, reports, statistical data, memoranda, working papers, records or the like, given or made during that relationship.
 

 (b) Privilege.—
 

 (1) No sexual assault counselor may, without the written consent of the victim, disclose the victim’s confidential oral or written communications to the counselor nor consent to be examined in any court or criminal proceeding.
 

 (2) No coparticipant who is present during counseling may disclose a victim’s confidential communication made during the counseling session nor consent to be examined in any civil or criminal proceeding without the written consent of the victim.
 

 42 Pa.C.S. § 5945.1.
 
 [5]
 
 This privilege “prevents sexual assault counselors from disclosing confidential communications made to them by the victims of sex-related crimes. The privilege, which is the equivalent of one involving private psychotherapeutic treatment, is absolute and applies both to oral communications and to records created during the course of the confidential relationship.”
 
 Commonwealth v. Gibbs,
 
 434 Pa.Super. 280, 283, 642 A.2d 1132, 1134 (1994). See:
 
 Commonwealth v. Wilson,
 
 529 Pa. 268, 602 A.2d 1290 (1992),
 
 cert. denied,
 
 - U.S. -, 112 S.Ct. 2952, 119 L.Ed.2d 574 (1992);
 
 Commonwealth v. Eck,
 
 413 Pa.Super. 538, 544-545, 605 A.2d 1248, 1252 (1992);
 
 Commonwealth v. Kennedy,
 
 413 Pa.Super. 95, 109-116, 604 A.2d 1036, 1043-1047 (1992) (en banc).
 
 *486
 
 “[T]he general powers of the courts do not include the power to order disclosure of materials that the legislature has explicitly directed be kept confidential.”
 
 Commonwealth v. Moore,
 
 526 Pa. 152, 159, 584 A.2d 936, 940 (1991).
 

 Pursuant to the express terms of section 5945.1, the sexual assault counselor privilege may be waived only with “the written consent of the victim.” 42 Pa.C.S. § 5945.1(b). See:
 
 Commonwealth v. Kunkle, supra
 
 at 508-509, 623 A.2d at 341. The privilege, however, applies to the Commonwealth, as well as the defense. See:
 
 Commonwealth v. Kennedy, supra
 
 at 115, 604 A.2d at 1046;
 
 Commonwealth v. Kyle,
 
 367 Pa.Super. 484, 503, 533 A.2d 120, 130 (1987). Therefore, “[i]n light of the absolute nature of the privilege, it necessarily precludes the revelation of protected information both to the Commonwealth and to the defense.”
 
 Commonwealth v. Gibbs, supra
 
 at 286, 642 A.2d at 1135. It has been held that where information pertaining to the victim’s sexual assault counseling is in the possession of the Commonwealth, the privilege is inapplicable. See:
 
 Commonwealth v. Miller,
 
 399 Pa.Super. 180, 185 n. 4, 582 A.2d 4, 7 n. 4 (1990),
 
 allocatur granted,
 
 530 Pa. 641, 607 A.2d 251 (1992);
 
 Commonwealth v. Higby,
 
 384 Pa.Super. 619, 621-622, 559 A.2d 939, 940 (1989);
 
 Commonwealth v. Cacek,
 
 358 Pa.Super. 381, 383-384, 517 A.2d 992, 993-994 (1986). Similarly, where the Commonwealth calls the sexual assault counselor as a witness at trial, in breach of the privilege, the defendant’s rights to confrontation and compulsory process will have been violated by denial of access to the victim’s sexual assault counseling records. See:
 
 Commonwealth v. Gibbs, supra.
 

 Review of the record in the instant case discloses that neither the victim nor any member of his family gave consent for the disclosure of the family therapy counseling records to the defense. However, during the pre-trial hearing on the motion to quash the subpoena, it was also disclosed that consent had been given for the victim’s therapist to testify as a Commonwealth witness at appellant’s trial and that the prosecuting attorney had obtained a release from the victim’s mother granting him access to the statements of the victim
 
 *487
 
 contained in the family counseling records. In fact, at appellant’s trial, the family therapy counselor was called as a witness by the Commonwealth for the purpose of explaining the circumstances surrounding the victim’s disclosure of the sexual abuse and to show prior consistent statements of the victim. The trial court, however, sustained a defense objection to this testimony and ruled it inadmissible.
 

 After careful review, we conclude that any privilege protecting the victim’s family therapy counseling records was waived by the victim and his family when they permitted the Commonwealth to have access to the same records which they sought to shield from the defense. Under these circumstances,
 

 the rationale for affording the confidentiality interest the impregnable protection unquestionably intended by the legislature is diminished substantially. This diminishment removes the confidentiality interest embodied in the statute from its position of absolute privacy, thus rendering the privilege more akin to one extant at common law, which our Supreme Court has held must yield to a defendant’s rights of confrontation and compulsory process.
 
 See Commonwealth v. Lloyd, 523
 
 Pa. 427, 567 A.2d 1357 (1989) (dealing with right of access to psychiatric records under common law privilege).
 

 Commonwealth v. Gibbs, supra
 
 at 286-287, 642 A.2d at 1135-1136 (footnote omitted). We hold, therefore, that the trial court erred by quashing the subpoena issued by the defense to the Family Institute to obtain the victim’s therapy records.
 

 The Commonwealth argues, however, that the trial court properly denied appellant access to the victim’s therapy records because he sought those records for an improper purpose. The Commonwealth argues that even if appellant is correct in his belief that the records contain a clinical observation that the victim was a “pathological liar,” such observation would not have been admissible into evidence because expert opinion evidence on witness credibility is prohibited. In any event, the Commonwealth’s argument continues, if the trial
 
 *488
 
 court erred by denying appellant access to the victim’s family counseling records, he is not entitled to a new trial. Rather, the Commonwealth suggests, the most relief to which appellant is entitled is a remand to determine whether or not the error was harmless.
 

 “The law is clear that the determination of the veracity of a witness is reserved exclusively for the jury.”
 
 Commonwealth v. Loner,
 
 415 Pa.Super. 580, 583, 609 A.2d 1376, 1377 (1992). See also:
 
 Commonwealth v. Gallagher,
 
 519 Pa. 291, 294, 547 A.2d 355, 357 (1988);
 
 Commonwealth v. Davis,
 
 518 Pa. 77, 82, 541 A.2d 315, 317 (1988). In this regard, the Supreme Court has declared:
 

 The question of whether a particular witness is testifying in a truthful manner is one that must be answered in reliance upon inferences drawn from the ordinary experiences of life and common knowledge as to the natural tendencies of human nature, as well as upon observations of the demeanor and character of the witness. See
 
 Danovitz v. Portnoy,
 
 399 Pa. 599, 604-605, 161 A.2d 146, 149 (1960). The phenomenon of lying, and situations in which prevarications might be expected to occur, have traditionally been regarded as within the ordinary facility of jurors to assess. For this reason, the question of a witness’ credibility has routinely been regarded as a decision reserved exclusively for the jury.
 
 Commonwealth v. Shaver,
 
 501 Pa. 167, 173, 460 A.2d 742, 745 (1983) (“It is solely the province of the trier of fact to pass upon the credibility of witnesses____”);
 
 Commonwealth v. Brockington,
 
 500 Pa. 216, 219, 455 A.2d 627, 628 (1983);
 
 Commonwealth v. O’Searo,
 
 466 Pa. 224, 229, 352 A.2d 30, 32 (1976) (“Traditionally, we have recognized not only the jury’s ability to determine the credibility of the witnesses but also we have placed this determination within their sole province.”).
 

 It is an encroachment upon the province of the jury to permit admission of expert testimony on the issue of a witness’ credibility.
 
 Commonwealth v. O’Searo,
 
 466 Pa. at 228-229, 352 A.2d at 32. Indeed, to permit expert testimony for the purpose of determining the credibility of a
 
 *489
 
 witness “would be an invitation for the trier of fact to abdicate its responsibility to ascertain the facts relying upon the questionable premise that the expert is in a better position to make such a judgment.”
 
 Id.
 

 Commonwealth v. Seese,
 
 512 Pa. 439, 443-444, 517 A.2d 920, 922 (1986). See:
 
 Commonwealth v. Purcell,
 
 403 Pa.Super. 342, 365, 589 A.2d 217, 229 (1991) (“Today, the law is clear that an expert witness may not offer an opinion on the issue of a witness’ credibility.”) See also:
 
 Commonwealth v. Spence,
 
 534 Pa. 233, 245, 627 A.2d 1176, 1182 (1993);
 
 Commonwealth v. O’Searo,
 
 466 Pa. 224, 228-230, 352 A.2d 30, 32 (1976);
 
 Commonwealth v. Evans,
 
 412 Pa.Super. 332, 335, 603 A.2d 608, 610 (1992).
 

 “Manifestly, however, the fact of mental ‘abnormality’ [of a witness] either at the time of observing the facts or at the time of testifying will be provable, on cross or by extrinsic evidence, as bearing on credibility, often ... in the discretion of the court.” McCormick, Evidence, Vol. 1, § 44, at p. 161 (4th ed. 1992) (footnotes omitted). “Evidence of mental illness or a disability which impairs a witness’ ability to perceive, remember and narrate perceptions accurately is invariably admissible to impeach credibility, even if not adequate to demonstrate incompetency.”
 
 Cohen v. Albert Einstein Medical Center,
 
 405 Pa.Super. 392, 405, 592 A.2d 720, 726 (1991), citing Packel and Poulin, Pennsylvania Evidence, Ch. VI, § 608.4 (1987) (collecting cases). Accordingly,
 

 [t]he crucial determination that a trial judge must make in ruling on the admissibility of evidence of a witness’s mental instability is whether it is related to the subject of the litigation or whether it affects the testimonial ability of the witness so as to impeach him. The evidence can be said to affect the credibility of a witness when it shows that his mental disorganization in some way impaired his capacity to observe the event at the time of its occurrence, to communicate his observations accurately and truthfully at trial, or to maintain a clear recollection in the meantime.
 
 See Commonwealth v. Repyneck,
 
 181 Pa.Super. 630, 124 A.2d 693,
 
 allocatur refused,
 
 181 Pa.Super. xxiv (1956).
 

 
 *490
 

 Commonwealth v. Butler,
 
 232 Pa.Super. 283, 287-288, 331 A.2d 678, 680 (1974) (footnote omitted). See also:
 
 Commonwealth v. Mason,
 
 358 Pa.Super. 562, 569-570, 518 A.2d 282, 285-286 (1986);
 
 Commonwealth v. Dudley,
 
 353 Pa.Super. 615, 619-620, 510 A.2d 1235, 1237-1238 (1986);
 
 Commonwealth v. Tacker,
 
 300 Pa.Super. 305, 307-309, 446 A.2d 627, 628-629 (1982);
 
 Commonwealth v. Duffy,
 
 238 Pa.Super. 161, 173, 353 A.2d 50, 57 (1975).
 

 Our review is hampered by the fact that the records of the victim’s family counseling therapy sessions are not a part of the record on appeal. We, therefore, do not know the contents of those records. However, if those records do, in fact, contain the clinical observation of the therapist that the victim was a “pathological liar,” as appellant has suggested, this diagnosis would have been relevant and admissible to impeach the victim’s credibility at trial. Webster’s Third New International Dictionary defines a “pathological liar” as “a person who habitually tells lies so exaggerated or bizarre that they are suggestive of mental disorder.”
 
 Id.
 
 at 1655. Such a diagnosis would have impacted upon the victim’s ability to perceive events and to truthfully relate the facts to which he testified at trial.
 

 Because we do not know the contents of the victim’s counseling records, however, we are unable to determine whether any information contained therein would have been helpful and relevant to appellant’s defense at trial. As such, we cannot reach a conclusion as to whether appellant has been prejudiced by the trial court’s ruling to deny defense counsel access to these records. Under these circumstances, we deem it necessary to remand this case for an evidentiary hearing, at which appellant’s counsel, after being permitted to review the victim’s family counseling records, will be permitted to argue the prejudicial impact of the denial of access to this information prior to trial. Thereafter, the trial court must determine whether or not the error was harmless. See:
 
 Commonwealth v. French,
 
 396 Pa.Super. 436, 454-457, 578 A.2d 1292, 1301-1302 (1990),
 
 aff'd,
 
 531 Pa. 42, 611 A.2d 175 (1992);
 
 Commonwealth v. Meo,
 
 362 Pa.Super. 328, 335-336, 524 A.2d 902, 905-
 
 *491
 
 906 (1987);
 
 Commonwealth v. Cacek, supra
 
 at 384-385, 517 A.2d at 994. If the trial court concludes, beyond a reasonable doubt, that the error could not have contributed to the verdict, and was, therefore, harmless, then the judgment of sentence may be reimposed. If, however, the trial court determines that the error was not harmless, then appellant must be granted a new trial.
 

 The judgment of sentence is vacated, at least for the time being, and the case is remanded for an evidentiary hearing consistent with the foregoing opinion. Jurisdiction is not retained.
 

 [1]
 

 . No further penalty was imposed on Davis’s conviction of endangering the welfare of a child.
 

 [2]
 

 . "A person commits a felony of the first degree when he engages in deviate sexual intercourse with another person ... who is less than 16 years of age." 18 Pa.C.S. § 3123(5). "Deviate sexual intercourse" is defined as "Sexual intercourse per os or per anus between human beings who are not husband and wife....” 18 Pa.C.S. § 3101.
 

 [3]
 

 . “Whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age ... is guilty of a misdemeanor of the first degree.” 18 Pa.C.S. § 6301(a).
 

 [4]
 

 . “A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits a misdemeanor of the first degree if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.” 18 Pa.C.S. § 4304.
 

 [5]
 

 . Appellant has not argued that the family counseling in which the victim participated was not within the scope of the sexual assault counselor privilege, and, with respect thereto, we express no opinion.